UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO

**MARK J. OSBORNE**                                                                                  **PLAINTIFF**

**v.**                                                          **CIVIL ACTION NO. 4:23CV-P116-JHM**

**JAILER STEPHAN HARMON** *et al.*                                              **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Plaintiff Mark J. Osborne filed the instant *pro se* prisoner 42 U.S.C. § 1983 action. The third amended complaint[1] (DN 16) is now before the Court for initial screening pursuant to 28 U.S.C. § 1915A. For the reasons stated below, the Court will dismiss some claims and allow other claims to proceed for further development.

### I. SUMMARY OF ALLEGATIONS

Plaintiff states that he was a pretrial detainee at the time of the alleged events. He sues Stephon Harmon, the Jailer of the Warren County Regional Jail (WCRJ); Melissa Wathen, a WCRJ corrections officer; Bruce Todd, the Jailer of the Henderson County Detention Center (HCDC); Jane Knight, an HCDC corrections officer; Warren County, Kentucky; Henderson County, Kentucky; "Viapath and its Affiliates"; and "John and/or Jane Doe(s)" who Plaintiff reports are employees of WCRJ, HCDC, and Viapath. Plaintiff sues Harmon and Todd in both their individual and official capacities and sues all other Defendants in their individual capacities only.

Plaintiff states that during his incarceration at the WCRJ from October 2019 to February 2023[2] "privileged mail was intentionally opened, handled and read outside the presence of the

---

[1] In a prior Order (DN 14), the Court ordered Plaintiff to file a third amended complaint which would supersede the original and purported amended complaints.
[2] Plaintiff identifies this date in the third amended complaint as February 2022. However, it is clear from the entirety of the complaint that the February 2022 listed date should be February 2023.

Plaintiff by Stephen Harmon, Melissa Wathen, and/or other corrections officers (John and/or Jane Doe(s))." Plaintiff identifies incidents where his mail was mishandled—a September 19, 2022, letter and package from the Office of the Federal Public Defender; an October 25, 2022, letter from the Community Legal Center; and a November 13, 2022, letter and "voting form" from the National Lawyer's Guild. He states that he "recalls additional events, to be identified through discovery of mail logs and video footage."

Plaintiff reports that he attempted to grieve and appeal the incidents concerning his mail which "resulted in Stephan Harmon moving the Plaintiff in retaliation, on 2/3/2023, less than (6) days after the Plaintiff stated the Plaintiff was bringing the issues to the Plaintiff's legal team." He states that he was moved to a facility "that did not allow inmates to view digital discovery on a computer provided by the Plaintiff's attorney and was farther away from the Plaintiff's attorney." Plaintiff states that before he was transferred he "observed a laptop and drives" that had been mailed to him by his criminal attorney "containing privileged and private attorney-client information [that] was not secured in the Plaintiff's property bag." He asserts that he "was told by someone else" that a "John or Jane Doe corrections officer [] was in possession of it." He states that an investigator from the Office of the Federal Public Defender was later able to retrieve the items.

Plaintiff further states that from August 2021 to February 2022 his criminal proceedings were held and that his "opposition brought forth witnesses, statements, and arguments that showed preparations to counter strategic information that should have been a surprise," including a line of questions of a witness "to refute evidence put together by the Plaintiff only days or a week earlier, evidence that could be found only in the aforementioned communications and laptop."

Based on the above allegations, Plaintiff argues that Harmon, Wathen, and John and Doe Defendants employed by WCRJ violated his First Amendment rights in opening, reading, and mishandling his privileged mail.  He also maintains that Warren County and Harmon "are responsible for the violation of the Plaintiff's First Amendment right to free speech, where it concerns the policy and practice of opening the Plaintiff's privileged mail outside of the Plaintiff's presence . . . ."  Plaintiff also asserts, based on the allegations above, that Harmon violated his Fifth and Fourteenth rights to due process and Sixth Amendment right to counsel "by causing a retaliatory move of the Plaintiff . . . having caused hindrance and contribution to a breakdown in communications between the Plaintiff and the Plaintiff's former counsel, a hinderance and delay in the Plaintiff's preparations for criminal cases and causing the Plaintiff to suffer stress."  He also alleges that Harmon, Wathen, and John and Jane Doe Defendant officers of WCRJ violated his Sixth Amendment right to counsel "by interfering with the attorney-client relationship, by providing privileged and private attorney-client strategic information . . . having caused the Plaintiff to suffer a less-than favorable judgement in another court and needlessly prolonging proceedings in that court."

Plaintiff also asserts that on February 3, 2023, when he was transferred to HCDC, he was ordered to hand over "any physical legal materials, paperwork and a thumbdrive" to a non-Defendant officer but that later he was informed by the officer that he would not be given back his legal materials "but could get copies upon request."  He states that he was allowed to obtain copies of some of the materials but was denied additional copies.

Plaintiff states, "Combined with a policy that would not permit the Plaintiff to directly interact with the physical property, only jail staff, and only to mail out materials, obtain copies paid for by the Plaintiff or fill out forms under camera and immediately mailed, the Plaintiff began

a long series of requests and grievances." He states that he was informed that several items were missing and some "were a mess and torn in some cases." When he was allowed to go through his property, he also found that items were missing. He states that he exhausted his administrative remedies on the issue by filing a grievance to which the Jailer responded that "HCDC could 'neither confirm nor deny' the Plaintiff's claims, which is an unsatisfactory and disengenous response."

Plaintiff asserts that during his incarceration at HCDC from February 3, 2023, to March 6, 2024, forty-four mail items were delayed being delivered to him, one of which was delayed 251 days. He states that the delays were "an intentional and malicious act." He reports that he received an explanation that a John or Jane Doe corrections officer or employee of Viapath "set up a 'phantom profile' that the system 'was trying to send it to'" and one which a John or Jane Doe Defendant "'was accessing' and reading." He states that a John or Jane Doe employee of Viapath "knew the cause and fix to the issue, but allowed the delays to continue despite complaints."

Plaintiff alleges that the delays in receiving his mail "were so long, the Plaintiff gave up for a while even attempting to get information from non-privileged sources to aid the Plaintiff's cases and also caused a drop-off in communications to the Plaintiff." He states that this caused him to seek out additional emotional support from the chaplain.

Plaintiff also states that while incarcerated at HCDC since February 3, 2023, "privileged mail, after being opened and inspected in front of the Plaintiff, was neither delivered to the inmate then or copied/scanned for delivery, and then destroyed in the Plaintiff's presence, as is common at other facilities." He continues as follows:

> Instead, Office Whitaker and Jane Knight would take the mail away, scan the mail to Viapath's servers, which Bruce Todd, Viapath and their staff knew were not secure and the mail scanned was accessible to others through the website command-center, telmate.com and other sites or applications, then place the originals in an

4

> unsecured location (the same property bag that items are missing from). As of this writing, no-less-than thirty-six (36) privileged mail items of the Plaintiffs were treated this way.

He states that he has observed at least one HCDC staff member access his mail through the website, "but for now, will withhold the name for fear of reprisals."

Plaintiff asserts that on August 18, 2023, Knight entered his cell to instruct him "to cease having mail sent, by the Kentucky Department for Archives and Libraries, to the HCDC physical address used for privileged mail." He reports that when he informed Knight that he sought the materials for a criminal case, Knight "let it slip that she 'was well aware of what [the Plaintiff's] mail contained.'" (Brackets by Plaintiff). He describes another incident on October 13, 2023, when Knight inspected legal mail he received and "appeared to read enough of the letter and form" sent by an attorney that she told Plaintiff that she "was going to keep the letter and form with her in her office, deviating from the jail's policies and procedures." He states that he filed a grievance and that he was later able to fill out the form.

Plaintiff states that during his incarceration at HCDC since February 3, 2023, "several pieces of mail were rejected without notification or delayed notification, all of the rejected mail was rejected without an appeals process." He asserts, "To understand this problem, it should be explained that HCDC has a more-than-typically complex mail process than most other detention facilities, requiring the usage of two mail addresses for different types of mail that also utilize different process." He states that, for the first process, mail is sent to a post office box in Phoenix, Maryland and "is for non-privileged mail, where the envelope of rejected mail is scanned, the scan is sent to HCDC, and once approved for viewing is delivered to the Plaintiff via Facility Messages." He states, "There is no appeal option . . . for listing dates and rejected mail that affected the Plaintiff, this way." He states that there is a second process for mail to be sent to HCDC's

5

street address "where the mail is supposed to be inspected in front of the resident inmate to whom the mail was addressed, but in at least two cases, more expected to be discovered with a review of the mail log, the events being, during the months of August and September, 2023, mail from the Kentucky department for Archives and Libraries was rejected without notification . . . by a John or Jane Doe corrections officer."

Plaintiff maintains that HCDC's mail and property policies "create a barrier to the courts," and that "during the month of August, 2023, the Plaintiff made an open records request to HCDC." Plaintiff complains that he had to pay fees for copies. He states that after his trust account "went indigent" he was not permitted to obtain copies of the forms that this Court ordered Plaintiff to use. After he grieved the issue, he was permitted one copy, which he states is why pages 9 through 19 of his complaint are hand copies. He states that he has still not been permitted to receive copies of the § 1983 form's Form B, which is the summons form.

Based on the above allegations, Plaintiff maintains that Henderson County and its jailer Todd are responsible for the violation of his First Amendment rights to free speech and access to the courts due to the policies and practices of handling his legal materials described above. He asserts that John and Jane Doe corrections officers at HCDC violated his "First, Fifth, Sixth, and Fourteenth Amendments rights to free speech, access to courts, due process, and counsel, by taking evidence, documents, and privileged mail and legal materials from the Plaintiff's property bag as described above. He states that this has caused him "to suffer spoilage and loss of evidence, loss of strategic advantage against oppositions in this and other courts, by exposure of privileged communications and to suffer general distress."

Also, based on his factual allegations, Plaintiff alleges that a John or Jane Doe Defendant employed by HCDC or Viapath violated his First Amendment right to free speech related to his

6

allegations that a "phantom profile" was set up which delayed his receiving mail. Plaintiff also maintains that John or Jane Doe Defendants violated his First Amendment right to free speech and Sixth Amendment right to counsel in accessing and reading and "ma[king] available to agents of the government" his privileged mail which caused him "to suffer distress and a loss of strategic advantage and against the Plaintiff's opposition in this and/or other courts."

Based on his above allegations, Plaintiff alleges that Knight violated his First Amendment rights to free speech and access to courts and Sixth Amendment right to counsel "by taking possession of, and/or reading the Plaintiff's privileged mail" which caused Plaintiff "to suffer distress, a freeze, a delay in court proceedings, and hindered attorney communications." Plaintiff asserts that the John and Jane Doe Defendants violated his First Amendment right to free speech "by violating policy and rejecting mail sent to the Plaintiff without notification."

Plaintiff further states that he "believes all of the aforementioned events, facts, and violations are apart of a greater campaign and conspiracy to deny the Plaintiff the possibility of ever receiving fair trials in either of the criminal cases the Plaintiff is facing in other courts." He states that his "opposition, as mentioned in the above claims consists of, but is not limited to, the Defendants in this case, the Franklin Police Department in Tennessee, the State of Tennessee, [and] the United States of America," as well as two Offices of the District Attorney of counties in Tennessee, and non-Defendant Cassandra Coffin-Berry. He describes the emotional distress he allegedly has suffered.

As relief, Plaintiff seeks compensatory and punitive damages, injunctive relief regarding HCDC policy, and declaratory relief.

## II. STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## III. ANALYSIS

### A. "Class Members"

The Court observes that in Plaintiff's original complaint, he listed "Class Members" as Plaintiffs in the caption. As the Court instructed in its prior Memorandum and Order (DN 14), Plaintiff, as a *pro se* prisoner, is not permitted to assert claims on behalf of other inmates or to assert a class action. Therefore, "Class Members" will be dismissed as Plaintiffs to the action.

### B. WCRJ

#### 1. *Handling of legal mail*

Plaintiff alleges that while he was housed at WCRJ his privileged mail was opened and read outside of his presence on three occasions.

"A prisoner's right to receive mail is protected by the First Amendment . . . ." *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003), and this protection is heightened when the incoming mail is legal mail. *Id*. at 874. Prison officials may open and inspect a prisoner's "legal mail" only in the presence of the prisoner and "in accordance with appropriately drafted and uniformly applied regulations." *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996) (citing *Wolff v. McDonald*, 418 U.S. 539 (1974)). However, "[w]hile a prisoner has a right to be present when his legal mail is opened, an isolated incident of mail tampering is usually insufficient to establish a constitutional violation. Rather, the inmate must show that prison officials 'regularly and unjustifiably interfered with the incoming legal mail.'" *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (citation omitted); *see also Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) ("[A] random and isolated incident [of mail interference] is insufficient to establish a constitutional violation."); *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990) (finding that even though defendants "admitted to opening one piece of [plaintiff's] constitutionally protected legal mail by

9

accident[,][s]uch an isolated incident, without any evidence of improper motive or resulting interference with [plaintiff's] right to counsel or to access to the courts, does not give rise to a constitutional violation"); *Rinehart v. Beck*, No. 5:09-CT-3019-D, 2011 U.S. Dist. LEXIS 1037, at *16 (E.D.N.C. Jan. 5, 2011) ("Isolated incidents of mail mishandling do not rise to the level of a constitutional violation."); *Lloyd v. Herrington*, No. 4:11CV-P128-M, 2011 U.S. Dist. LEXIS 138728, at *5 (W.D. Ky. Dec. 2, 2011) ("Even if the Court interprets Plaintiff's complaint as alleging two instances of interference with his mail - one of the outgoing motion and one of his incoming piece of legal mail - the Court still finds that the two incidences taken together do not rise to a constitutional violation.").

Assuming for the purposes of this initial review only that the mail items Plaintiff describes were constitutionally protected legal mail, Plaintiff identifies only three incidents over the course of his more than three years of incarceration at WCRJ where his mail was allegedly mishandled. The Court finds that these are isolated incidents, which do not give rise to a constitutional violation. To the extent Plaintiff also states that he "recalls additional events, to be identified through discovery of mail logs and video footage[,]" he still does not allege that Defendants regularly interfered with his mail. Therefore, the claims against WCRJ Defendants Harmon, Wathen, John and Doe Defendants, and Warren County based on the opening of Plaintiff's mail will be dismissed for failure to state a claim upon which relief may be granted.

### 2. *Transfer and interference with right to counsel*

Upon consideration, the Court will allow Plaintiff's retaliation claim in violation of the First Amendment to proceed against Harmon in his individual capacity and will allow his claims for interference with his right to counsel in violation of the Sixth Amendment to proceed against Harmon, Wathen, and John and Jane Doe officers of WCRJ in their individual capacities.

However, Plaintiff's official-capacity claims against these Defendants are construed as brought against his employer, Warren County. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)).  When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues:  (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).

In regard to the second component, a municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993).  To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

Plaintiff does not allege that the actions taken against him in either his alleged retaliatory transfer or in interfering with his right to counsel occurred pursuant to a policy or custom of Warren County.  Accordingly, his official-capacity claims against all Defendants must be dismissed for failure to state a claim upon which relief may be granted.

For the same reasons, Plaintiff's claim against Warren County must also be dismissed for failure to state a claim. Moreover, to the extent he alleges that Warren County or Harmon are liable for the actions of employees of WCRJ, the doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto employers or supervisors. *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Therefore, Plaintiff's claims against Warren County or Harmon on this basis will be dismissed for failure to state a claim.

### 3. *Due process*

Plaintiff also alleges violations of the Fifth and Fourteenth Amendments' Due Process Clauses. The Supreme Court has expressly held that where a constitutional claim is covered by a specific constitutional provision, the claim must be analyzed under the standard appropriate to that specific provision, not under the broad rubric of substantive due process. *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998); *see also Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."); *Tellis v. Braman*, No. 1:22-cv-858, 2022 U.S. Dist. LEXIS 201736, at *17 (W.D. Mich. Nov. 4, 2022) ("In this case, Plaintiff's claims regarding interference with outgoing mail and his access to the courts are properly analyzed under the First Amendment. . . . Consequently, any intended substantive due process claim will be dismissed.").

Because Plaintiff's allegations against the Warren County Defendants fall under the First and Sixth Amendments, his claims for violation of the Due Process Clauses of the Fifth and

12

Fourteenth Amendments will be dismissed for failure to state a claim upon which relief may be granted.

### C. HCDC

#### 1. *Denial of access to courts based on handling of legal materials and mail*[3]

Plaintiff alleges that HCDC has a policy that does not allow him to handle physical copies of his legal materials, that he was denied or had to pay for copies of his legal materials, that some of his legal materials "were a mess and torn" and some were missing, and that he still has not received a copy of this Court's § 1983 form packet's Form B. Plaintiff also alleges that forty-four of his mail items were delayed due to a "phantom profile" being set up by a John or Jane Doe employee of HCDC or Viapath. He states that this made him give up on receiving mail "from non-privileged sources to aid the Plaintiff's cases." He also alleges that Defendant Knight told him to stop having mail from the Kentucky Department and Libraries sent to the address used for privileged mail and that several pieces of mail from the Kentucky Department of Archives and Libraries were rejected without notification or an appeals process.

Prisoners have a constitutional right of meaningful access to the courts under the First Amendment. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). Meaningful access to the court under the First Amendment will vary with the circumstances, and officials are to be accorded discretion in determining how that right is to be administered. *Id.* at 830-31; *John L. v. Adams*, 969 F.2d 228, 233-34 (6th Cir. 1992). To state a claim for a denial of access to the courts, a prisoner must demonstrate actual prejudice to pending litigation that challenges his conviction or conditions of confinement. *Lewis v. Casey*, 518 U.S. 343, 355 (1996). That is, Plaintiff must plead actual injury, and no actual injury occurs without a showing that a claim "has been lost or rejected, or that the

---

[3] Plaintiff also alleges violations of "free speech" against Defendants. The Court analyzes his free speech claims under the more specific First Amendment standards for denial of access to courts/interference with mail.

13

presentation of such a claim is currently being prevented." *Id.* at 356; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (stating that an inmate must show, "for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim").

By the same token, where an inmate alleges interference with his legal mail, there must be an allegation of actual injury or prejudice to pursuit of a legal claim. *Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010); *see also Corsetti v. McGinnis*, 24 F. App'x 238, 241 (6th Cir. 2001) ("Regarding the alleged reading of Corsetti's legal mail and legal materials, Corsetti has not alleged, nor is there any evidence, that any papers were seized or that the defendants' reading of the papers caused actual injury or 'hindered his efforts to pursue a legal claim.'") (quoting *Lewis*, 518 U.S. at 351; *Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006) ("A plaintiff must show that non-delivery of his legal mail resulted in actual injury by frustrating, impeding, or hindering his efforts to pursue a legal claim.") (internal quotation marks, footnote, and citations omitted).

Plaintiff alleges no actual any injury to his criminal defense or to any pending litigation due to the alleged actions taken by HCDC or Viapath personnel concerning the handling of his legal materials and mail.  For example, while he states that he has not been given this Court's Form B to the § 1983 form packet, which is the summons form, Plaintiff can request copies of the form from the Clerk of Court.  Therefore, Plaintiff's claims for denial of access to courts based on the handling of his legal materials and mail against Todd, Knight, Henderson County, "Viapath and its Affiliates," and John and Jane Doe corrections officers of HCDC and Viapath must be dismissed for failure to state a claim.

### *2. Interference with right to counsel*

Upon review, the Court will allow Plaintiff's claims based on interference with his right to counsel in violation of the Sixth Amendment to proceed against Henderson County, Knight and the John and Jane Doe corrections officers of HCDC.

### *3. Due process*

Plaintiff's due process claims against the HCDC Defendants must be dismissed for the same reasons that his due process claims against the WCRJ Defendants were dismissed. *See supra* Part III.B.3.

### D. Conspiracy

Plaintiff further asserts that the actions alleged were a part of a conspiracy "to deny the Plaintiff the possibility of ever receiving fair trials in either of the criminal cases the Plaintiff is facing in other courts." He alleges that Defendants conspired with the Franklin, Tennessee Police Department, the State of Tennessee, the United States, two District Attorney's offices in Tennessee, and a non-Defendant individual.

Under § 1983 a civil conspiracy is "'an agreement between two or more persons to injure another by unlawful action.'" *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). In order to state a claim of conspiracy, Plaintiff must allege the elements that make up a conspiracy claim: that a single plan existed; that the alleged co-conspirators shared in the general conspiratorial objective to deprive Plaintiff of his

15

constitutional or federal statutory rights; and that an overt act was committed in furtherance of the conspiracy that caused injury. *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985).

Upon review, Plaintiff has failed to meet the pleading standard required to state a conspiracy claim. Plaintiff's complaint is completely devoid of factual matter that would allow the Court to draw a reasonable inference that Defendants engaged in a conspiracy to violate his constitutional rights. Plaintiff does not plead the "specifics" of any alleged conspiracy such as "when, where, or how the defendants conspired." *Perry v. Se. Boll Weevil Eradication Found., Inc.*, 154 F. App'x 467, 477 (6th Cir. 2005). He makes no allegations as to how or why employees of two separate jails along with Tennessee and federal prosecutors all conspired together to violate his rights. "The 'web of inference[s] is too weak' on the alleged facts to permit a finding, 'absent sheer speculation,' that [Defendants] shared . . . [an] unlawful objective." *Bazzi v. City of Dearborn*, 658 F.3d at 603 (quoting *United States v. Sliwo*, 620 F.3d 630, 637 (6th Cir. 2010)).

Accordingly, Plaintiff's § 1983 conspiracy claims against all Defendants will be dismissed for failure to state a claim upon which relief may be granted.

## IV. CONCLUSION

For the reasons set forth herein, and the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** that "Class Members" are dismissed from the action.

The **Clerk of Court is DIRECTED to terminate** "Class Members" as a Plaintiff listed in the docket sheet.

**IT IS FURTHER ORDERED** that Plaintiff's claims based the handling of his legal mail against Harmon, Wathen, John and Jane Doe Defendants, and Warren County; his official-capacity claim against Harmon and claim against Warren County based on Plaintiff's transfer and interference with his right to counsel; his claims for denial of access to courts based on the handling

16

of his legal materials and mail against Todd, Knight, Henderson County, "Viapath and its Affiliates," and John and Jane Doe corrections officers of HCDC and Viapath; and his due process and conspiracy claims against all Defendants are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The **Clerk of Court is DIRECTED to terminate** Todd, Warren County (listed in the docket sheet as both Warren County of Kentucky and Municipality of Warren County), "Viapath and its Affiliates," Deputy Whitaker, and Officer Brickner[4] as no claims remain against them.

The **Clerk of Court is further DIRECTED to terminate** "Municipality of Henderson County Kentucky" as duplicative of the listing for "Henderson County of Kentucky."

The **Clerk of Court is further DIRECTED to change** the docket sheet's listing of "John & Jane Doe" to "John and Jane Doe Defendants employed Warren County Regional Jail" and to change the docket sheet's listing of "John/Jane Does" to "John and Jane Doe Defendants employed Henderson County Detention Center."

The Court has allowed the following claims to proceed: Plaintiff's retaliation claim in violation of the First Amendment against Harmon (in his individual capacity only); his claims for interference with his right to counsel in violation of the Sixth Amendment against Harmon (in his individual capacity only), Wathen, and John and Jane Doe officers of WCRJ; and his claims based on interference with his right to counsel in violation of the Sixth Amendment against Henderson County, Knight, and the John and Jane Doe corrections officers of HCDC.

In allowing these claims to continue, the Court passes no judgment on their merit or ultimate outcome.

---

[4] Plaintiff sued Whitaker and Brickner in the original complaint but did not sue them in the superseding third amended complaint. Therefore, they are no longer Defendants to the action.

The Court will enter a separate Service and Scheduling Order to govern the claims that have been permitted to proceed.

Date: May 29, 2024

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
     Defendants Harmon, Wathen, and Knight
     Warren and Henderson County Attorneys
4414.010