**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

**MARK J. OSBORNE** **PLAINTIFF**

**v.** **CIVIL ACTION NO. 4:23-CV-00116-JHM**

**JAILER STEPHEN HARMON *et al.*** **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the motion for summary judgment filed by Defendants[1] Henderson County, Officer Knight, Officer Toman, and Colonel Hendricks. (DN 180). Plaintiff Mark J. Osborne filed a response, amended response, and supplemental response. (DNs 192, 203, and 214). Defendants filed a reply and supplemental reply. (DNs 208, 215). Accordingly, this matter is fully briefed and stands ripe for decision.

**I.**

Plaintiff filed the instant *pro se* action under 42 U.S.C. § 1983 alleging violations of his constitutional rights during his incarceration at Henderson County Detention Center ("HCDC"). (DN 1). The Court conducted an initial review of Plaintiff's complaint and subsequent amended complaints pursuant to 28 U.S.C. § 1915A and allowed: (i) a Sixth Amendment claim for interference with his right to counsel and (ii) a First Amendment claim for interference with Plaintiff's non-legal mail. (DNs 24, 92, and 154).

**II.**

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a

[1] Plaintiff also brought claims against Jailer Stephen Harmon and Deputy Jailer Melissa Wathen of the Warren County Regional Jail. Those Defendants have filed a separate motion for summary judgment (DN 181), which will be adjudicated via a separate Memorandum Opinion and Order.

matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-movant must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of *pro se* pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6-7 (6th Cir. May 5, 2010) (citations omitted). When opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and a party's "status as a *pro se* litigant does not alter" its burden of showing a genuine issue for trial. *Viergutz v. Lucent Techs., Inc.*, F. App'x 482, 485 (6th Cir. 2010) (citation omitted). Yet statements in a verified complaint that

are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

**III.**

*A. Plaintiff's Allegations*

Plaintiff Mark J. Osborne was confined at the Henderson County Detention Center ("HCDC") during the events relevant to these claims. His allegations concern two related subjects: delays and rejections affecting non-legal mail and HCDC practices that allegedly exposed, withheld, or destroyed communications and materials relating to counsel. Plaintiff initially pleaded some of the challenged conduct against John or Jane Doe corrections officers; however, he now maintains that the non-legal mail claim arose from Henderson County policies and systems and identified Officer Toman, Colonel Hendricks, and Officer Knight as the individuals allegedly responsible for his lack of access to counsel. (DN 16, PageID #: 156-59; DN 190, PageID #: 2782-88).

*(i) HCDC's Non-Legal Mail System*

Plaintiff provides that HCDC requires non-legal mail to be sent to a post office box in Maryland. (DN 16, PageID #: 152). An outside service scans the mail, transmits it to HCDC for approval, and, if approved, makes it available to Plaintiff through the facility-message function on a ViaPath tablet. (*Id.*). Plaintiff alleges that the process provided no meaningful notice or appeal when mail was rejected. (*Id.*). He further alleges that mail sent through HCDC's direct address was sometimes rerouted, rejected, or withheld without notification. (*Id.*).

Plaintiff alleges that, during August and September 2023, mail from the Kentucky Department for Libraries and Archives was rejected without notice. (*Id.*, PageID #: 153). Plaintiff

contends that Henderson County's use of separate addresses, an outside scanning facility, and the tablet-delivery system made it difficult to determine where mail had been delayed or rejected. (*Id.*).

*(ii) Delayed Mail and the Duplicate Profile*

Plaintiff further alleges that forty-four mail items were delayed between February 13, 2023, and March 6, 2024, including one item delayed for 251 days. (DN 16, PageID #: 149). He attributes the delays to a duplicate or "phantom" tablet profile and alleges that another user accessed and read mail directed to that profile. (*Id.*). Plaintiff maintains that the delays interrupted communications, prevented him from obtaining information for pending matters, and caused him to seek emotional support from the chaplain. (*Id.*, PageID #: 150).

Plaintiff contends that an HCDC employee or ViaPath user created a duplicate or "phantom" profile to which the system attempted to send his mail. (*Id.*). He further alleges that another user accessed and read items associated with that profile and that the delays continued after ViaPath personnel knew of the problem. (*Id.*). Plaintiff maintains that the interruptions prevented him from receiving information from family, friends, publishers, and sources he had contacted for assistance with pending matters. (*Id.*).

Defendants' interrogatory answers characterize the "phantom" account as a technological glitch in the ViaPath tablet operating system. (DN 190, PageID #: 2785, 2813-14). Defendants provide that they lack specialized technological knowledge and could not identify who created the account. (*Id.*).

*(iii) Alleged Interference with Access to Counsel*

Plaintiff alleges that legal materials mailed by his public defender, including a laptop and drives containing private attorney-client information, were not secured in his property upon arrival

at HCDC. (DN 16, PageID #: 146-47). He states that HCDC personnel told him that another person possessed the equipment and that an investigator from the Federal Public Defender's Office later retrieved it. (*Id.*, PageID #: 147). Plaintiff maintains that the disclosure of strategic information contained in those materials impaired his position in criminal proceedings. (*Id.*, PageID #: 147).

Plaintiff further alleges that, when he transferred to HCDC, staff required him to surrender his physical legal materials, paperwork, and a thumb drive. (*Id.*, PageID #: 147-48). He states that the materials were held outside the ordinary property check-in process, that he could not review them directly, and that he could obtain only copies upon request. (*Id.*). Plaintiff contends that this arrangement restricted his ability to review information and communicate effectively with counsel. (*Id.*).

Plaintiff describes a separate procedure for privileged mail delivered while he was at HCDC maintaining that an officer opened and inspected the mail in his presence but then took it away, scanned it to ViaPath servers, and placed the original in stored property rather than allowing him to retain or copy it. (*Id.*, PageID #: 150-51). Plaintiff alleges that HCDC personnel and ViaPath users could access the scanned mail through administrative websites and that the originals were kept in a location he considered insecure. (*Id.*). He states that at least thirty-six pieces of privileged mail were handled in this manner. (*Id.*).

Plaintiff attaches to his complaint, a February 2023 grievance response in which HCDC staff stated that, under the facility policy, legal mail was scanned to the tablet and then placed in the inmate's property rather than destroyed. (DN 1-7, PageID #: 62). Plaintiff contends that the policy forced him to choose between foregoing communications with counsel and permitting jail or contractor personnel to access confidential material. (DN 16, PageID #: 156-59). He alleges

that the practice exposed privileged communications, hindered attorney communications, and delayed proceedings. (*Id.*).

*(iv) Defendant Knight*

Plaintiff alleges that, on April 17, 2023, the legal-mail cart brought him a mailing from a law firm that included a sensitive letter he had sent to the firm and a handwritten note stating that the intended recipient had retired. According to Plaintiff, the delivering officer stated that she could not scan the letter, and he did not receive it. Knight closed Plaintiff's resulting grievance and responded that staff did not read inmate mail and that the letter had been placed in Plaintiff's property on the day it arrived. (DN 1-7, PageID #: 63).

Plaintiff alleges more generally that Knight took possession of, retained, read, or failed to deliver privileged mail. (DN 16, PageID #: 159). His third amended complaint asserts that her conduct delayed proceedings and hindered communications with counsel. (DN 190, PageID #: 2788).

*(v) Defendants Toman and Hendricks*

Plaintiff alleges that, after he requested forms and other materials from his stored property in January 2024, staff informed him that several items were missing and that some legal papers were disorganized or torn. (DN 16, PageID #: 148-49). After submitting requests and grievances, Plaintiff was permitted to inspect the property. (*Id.*). He states that phone logs, letters, evidentiary documents, grievances, and a thumb drive were missing. (*Id.*).

Defendant Toman acknowledges that Plaintiff complained about missing property and was permitted to review his materials in a secure room under camera. (DN 190, PageID #: 2794-96). She states that Plaintiff had enough mail to fill a large trash bag and sorted it into piles consisting of material to discard, material to copy, and mail that Plaintiff labeled as containing discrepancies.

(*Id.*, PageID #: 2794). Toman further states that the discrepancy mail allegedly lacked parts of its original contents and that another HCDC staff member made the requested copies. (*Id.*, PageID #: 2796).

Plaintiff presents a different account of what occurred after the review. He alleges that Toman acknowledged at least one pile of discrepancy materials but returned him to his cell rather than helping him complete the comparison. (*Id.*, PageID #: 2786). Plaintiff states that Toman then destroyed most of the materials remaining in his stored property and later told him that she had destroyed some of them at Hendricks's direction. (*Id.*). He alleges that the missing or destroyed materials included privileged mail and documents needed for his criminal proceedings and other legal matters. (*Id.*).

The grievance records reflect that Plaintiff complained about a missing letter and thumb drive, asked who had accessed his legal property, and sought an explanation for the facility's logging practices. (DN 190, PageID #: 2799-2803). In a January 24, 2024, response signed "Clevidence-Toman," Toman stated that a prior property officer had logged the materials generally as legal papers, that officers were not authorized to review and separately log each legal document, and that she would investigate. (*Id.*, PageID #: 2803). On February 29, 2024, Hendricks responded that Plaintiff had been allowed to search the excess legal mail and that the facility could neither confirm nor deny his allegations concerning missing documents or a flash drive. (*Id.*, PageID #: 2800).

Plaintiff alleges that Toman and Hendricks were responsible for taking or destroying evidence, legal documents, privileged mail, and other materials and that the loss interfered with his communications with counsel and his ability to prepare for criminal proceedings. (DN 16, PageID #: 157-59). Plaintiff therefore attributes the alleged interference with access to counsel

both to HCDC's handling of privileged communications and to the individual conduct of Knight, Toman, and Hendricks. (DN 190, PageID #: 2785-88).

*B. Defendants' Motion for Summary Judgment*

Defendants characterize the remaining claims as a Sixth Amendment claim based on limits on physical possession of legal mail and allegedly damaged or missing legal materials and a First Amendment claim based on delays in non-legal mail. (DN 180-1, PageID #: 1756). Defendants argue that neither claim presents a genuine issue of material fact. (*Id.*, PageID #: 1757).

Defendants acknowledge that the Sixth Amendment guarantees reasonable access to criminal counsel, not unlimited use of a particular communication method. (*Id.*, PageID #: 1759-61). Defendants maintain that Plaintiff had to show both an unreasonable denial of access to counsel and the absence of adequate alternative methods of communicating with counsel. (*Id.*, PageID #: 1759). Defendants rely on decisions dismissing claims involving delayed mail, restricted telephone access, or limited access to legal materials when other channels remained available and no prejudice to the criminal defense was shown. (*Id.*, PageID #: 1760-61).

Defendants also argue that this Court had repeatedly upheld HCDC's mail policy against constitutional challenges. (*Id.*, PageID #: 1762). They contend that Plaintiff's inability to keep physical legal mail in his cell therefore did not violate the Constitution. (*Id.*, PageID #: 1762). Defendants maintain that Plaintiff regularly used all available means of communication during his sixteen months at HCDC, including outgoing mail, legal mail, telephone calls, video visits, and four in-person attorney visits. (*Id.*, PageID #: 1762-63). They assert that their review of Plaintiff's criminal files revealed no indication that HCDC created a barrier to counsel or prejudiced his criminal defense. (*Id.*, PageID #: 1763).

On the First Amendment non-legal-mail claim, Defendants acknowledged that some mail was delayed but attributed the delay solely to ViaPath, a third-party service provider. (*Id.*) They explain that non-legal mail was sent to an unaffiliated facility in Maryland, digitized, and delivered through the ViaPath tablet system. (*Id.*, PageID #: 1763-64). Defendants contend that a temporary technological problem caused some inmates' personal mail to enter the wrong accounts and that a nonparty HCDC employee eventually obtained access to the alternate account and corrected Plaintiff's problem. (*Id.*, PageID #: 1764).

Defendants argue that no HCDC policy authorized delayed mail and that there was no evidence they intended to interfere with delivery. (*Id.*, PageID #: 1765). They further argue that the delay did not amount to a constitutional deprivation because Plaintiff continued to communicate through mail, telephone calls, and video visits. (*Id.*). Defendants maintain that the First Amendment protects communication, not access to any particular medium, and that Plaintiff's frequency of communication defeats his claim. (*Id.*).

Defendants separately argue that dismissal was warranted under Rule 41(b) because Plaintiff had not filed the detailed pretrial memorandum required by the Court's scheduling order. (*Id.*, PageID #: 1765-66). They contend that Plaintiff's numerous other filings showed he was capable of complying with that straightforward requirement. (*Id.*, PageID #: 1766).

*C. Plaintiff's Response, Amended Response, and Supplemental Response*

*(i) Response to Defendants' Motion for Summary Judgment*

In his original response, Plaintiff contended that summary judgment was premature because discovery had not closed and several discovery-related motions remained unresolved. (DN 192, PageID #: 2854). Plaintiff further asserts that recently ordered production from his public defender and separate proceedings concerning ViaPath records could supply additional

evidence relevant to his response. (*Id.*). In the alternative, Plaintiff asks the Court to direct service of the motion and allow him twenty-one days to respond after service. (*Id.*, PageID #: 2854-55).

*(ii) Amended Response to Defendants' Motion for Summary Judgment*

Plaintiff renewed his contention that Defendants' motion had never been served, but he submitted an amended response based on the Court's intervening orders and the materials then available to him. (DN 203, PageID #: 3052-53). Plaintiff argues that HCDC's policy barred inmates from retaining physical legal materials and caused an officer to take his materials before his arrival at HCDC. (*Id.*, PageID #: 3053). Although Plaintiff was initially permitted to request copies of materials he thought he would need immediately, he maintains that he misunderstood the limitation and was later denied direct access to the remaining materials. (*Id.*). Plaintiff further argues that the handling of those materials conflicted with federal detention standards requiring property to be inventoried and permitting access to legal materials. (*Id.*).

Plaintiff described HCDC's legal-mail procedure as requiring an officer to open mail in front of the inmate, remove all contents, and take them to another location before scanning an electronic copy to the tablet system. (*Id.*, PageID #: 3054). Plaintiff asserts that administrative users could view the scanned mail and that the system did not provide an access log showing who had opened it. (*Id.*, PageID #: 3054-55). He argues that removing the mail from the inmate's presence before scanning defeated the confidentiality protections associated with inspection in the inmate's presence. (*Id.*). Plaintiff also maintains that Knight and Toman had read his legal mail, which he viewed as evidence that the risk of disclosure was actual rather than hypothetical. (*Id.*, PageID #: 3055).

Plaintiff argues that telephone communication did not furnish a suitable alternative because the system permitted only a limited number of formats and required an attorney to complete a

separate process to disable recording. (*Id.*, PageID #: 3055-56). He maintains that the system could not reliably reach toll-free numbers, call trees, routing systems, or automated answering services used by attorneys and other organizations. (*Id.*). Plaintiff stated that he reached his public defender by telephone only a few times near the end of the criminal proceedings and kept those unsecured calls brief because he feared monitoring. (*Id.*, PageID #: 3056).

Plaintiff likewise contends that in-person attorney visits were monitored and recorded. (*Id.*, PageID #: 3057). He stated that he met his public defender in a holding cell and a small visitation room equipped with recording systems and, on one occasion, was required to leave a door open while an officer remained nearby. (*Id.*). Plaintiff maintains that he and his public defender believed the systems captured audio as well as video, causing them to whisper and preventing candid discussion. (*Id.*, PageID #: 3057).

Plaintiff separately attributes several alleged legal-mail failures to Knight. (*Id.*, PageID #: 3058-59). He argues that four mail-log entries processed by Knight had no corresponding facility-message entries, which he treated as evidence that the mail was never delivered. (*Id.*, PageID #: 3058). Plaintiff also alleges that Knight read a mailing in front of him and retained his documents under the stated purpose of assisting him but instead hindered his access to the materials. (*Id.*, PageID #: 3059). He contends that non-delivery could have deprived him of legal assistance, case law, or information relevant to the claims he was pursuing. (*Id.*, PageID #: 3059-60).

Plaintiff further argues that HCDC personnel destroyed nearly all of the legal materials held in his stored property without his authorization. (*Id.*, PageID #: 3060-62). He asserts that a thumb drive containing unrecovered documents and work product was present when he entered HCDC but later disappeared. (*Id.*, PageID #: 3060-61). Plaintiff states that when he was eventually allowed to review the property, he created a pile of discrepancies and asked for

assistance documenting missing items. (*Id.*, PageID #: 3061). He alleges that Toman returned him to his cell without completing that process and then destroyed most of the remaining materials, including the discrepancy pile, after speaking with Hendricks. (*Id.*). Plaintiff denies ever authorizing destruction of his legal materials. (*Id.*, PageID #: 3062).

Plaintiff claims that the lost materials included forensic reports, witness letters, attorney work product, original legal mail, and electronic documents that neither he nor his attorneys could reproduce. (*Id.*). He argues that the loss of the thumb drive prevented him from giving his public defender evidence and prior work product needed to seek withdrawal of his guilty plea. (*Id.*, PageID #: 3062-63). Plaintiff maintains that he spent months trying to communicate his desire to withdraw the plea but could not reach his public defender by telephone and believed his letters were unread or untimely delivered. (*Id.*, PageID #: 3063). He further asserts that, even after his public defender learned of his wish to withdraw the plea, the monitored environment prevented him from obtaining effective assistance before sentencing. (*Id.*).

Plaintiff argues that the Sixth Amendment required an opportunity to speak candidly and confidentially with counsel without unreasonable governmental interference. (*Id.*, PageID #: 3065). He contends that HCDC's combined practices concerning legal mail, telephone calls, visitation, and stored legal materials left him without any private and effective channel for attorney-client communication. (*Id.*, PageID #: 3065-67). Plaintiff therefore characterizes his claim as the denial of meaningful confidential access, not merely dissatisfaction with a preferred means of communication. (*Id.*, PageID #: 3066-67).

On the First Amendment non-legal-mail claim, Plaintiff argues that HCDC's system allowed an outside facility to reject mail without notifying the inmate and offered no meaningful appeal. (*Id.*, PageID #: 3063). Plaintiff also attributes extended delays to a technical problem that

routed his mail to the wrong account. (*Id.*, PageID #: 3063-64). He maintains that staff ignored repeated requests and grievances for approximately eleven months even though a deputy eventually diagnosed and corrected the problem in a single day. (*Id.*, PageID #: 3064). Plaintiff argues that the prolonged inaction showed inadequate training or a practice of disregarding inmate mail complaints. (*Id.*, PageID #: 3064, 3068).

Plaintiff contends that the delayed or rejected mail impaired communications with family and friends, publishers, governmental archives, investigators, forensic resources, and religious organizations. (*Id.*, PageID #: 3065, 3067). He argues that telephone and video services were not adequate substitutes because the phone system could not reach many automated or toll-free systems and the video platform required an outside person to create an account and initiate contact. (*Id.*, PageID #: 3067). Plaintiff asserts that communication is bidirectional and that evidence of his efforts to send messages did not establish that the intended recipients could respond. (*Id.*). He concludes that Henderson County and the individual officials serving in specialized mail, property, and supervisory roles were responsible for the alleged violations and asks the Court to deny summary judgment. (DN 203, PageID #: 3068).

*(iii) Supplemental Response to Defendants' Motion for Summary Judgment*

Plaintiff uses his supplemental response to challenge Defendants' account of the criminal proceedings and the available methods of communication at HCDC. (DN 214, PageID #: 3475-76). He argues that the absence of communication complaints from the federal criminal docket did not establish that confidential discussions occurred without difficulty because important attorney-client communications ordinarily occur off the record. (*Id.*, PageID #: 3478). Plaintiff also maintains that events Defendants cited from before his transfer to HCDC could not show that HCDC's later practices caused no interference. (*Id.*, PageID #: 3477-78).

Plaintiff argues that Defendants offered inconsistent explanations for the destruction of his legal materials, first describing a review for requested copies and later describing a review prompted by excess property. (*Id.*, PageID #: 3478-79). He contends that the written requests and grievances did not support either explanation and that the first reference to excess legal mail appeared only after he complained that property was missing. (*Id.*, PageID #: 3479). He relies on follow-up requests and evidence concerning the missing thumb drive to argue that most of his legal materials had been destroyed for reasons other than those Defendants supplied. (*Id.*, PageID #: 3480).

Plaintiff also argues that Defendants mischaracterized their mail logs. (*Id.*, PageID #: 3480-81). He asserts that the log Defendants described as outgoing non-legal mail was actually a log of incoming non-legal mail that included the delayed items at issue. (*Id.*, PageID #: 3481). Plaintiff maintains that most of the sixty-one logged pieces of legal mail concerned Veterans Affairs or VetHelp matters, only one came from his public defender, and four items processed by Knight were not delivered through the tablet system. (DN 214, PageID #: 3481). He further argues that scanned legal mail was accessible to staff and that Knight had in fact read at least some of it. (DN 214, PageID #: 3481).

Plaintiff challenges Defendants' reliance on telephone and video-visit totals by arguing that the logs overstated his actual communications. (*Id.*, PageID #: 3481-82). He counts sixty-four telephone dials, fifty-nine connected calls, and fifty-seven substantive conversations, most involving only three people. (*Id.*, PageID #: 3481). Plaintiff acknowledges that those calls permitted communication with a few family members and friends and abandons his claim as to those individuals. (*Id.*, PageID #: 3482). He asserts that the 144 video calls represent calls from his inmate profile and not necessarily calls he participated in. (*Id.*).

Plaintiff maintains that the remaining communication systems were unsuitable for counsel, businesses, publishers, investigators, forensic services, and religious organizations. (*Id*., PageID #: 3482-83). He argues that video communication required the outside party to locate his profile, provide personal identifying information, obtain approval, and initiate the contact. (*Id*., PageID #: 3483). Plaintiff further asserts that video visits occurred in open housing areas and could be monitored and were recorded. (*Id*.). He maintains that even the attorney visitation room contained cameras and that no unmonitored room was made available for his meetings with his public defender. (*Id*.).

Plaintiff argues that the authorities cited by Defendants involved detainees who retained some adequate and unmonitored alternative, while every method offered by HCDC was monitored or vulnerable to disclosure. (*Id*., PageID #: 3484-86). He contends that the ability of staff to access scanned legal mail and the difficulty of disabling telephone recording distinguished his claim from cases involving only a preferred method of communication. (*Id*., PageID #: 3485-86). Plaintiff also argues that prior decisions upholding HCDC's mail policy did not address the removal of an inmate's presence between the opening of mail and its later electronic delivery. (*Id*., PageID #: 3486-87).

Plaintiff argues that Henderson County remained responsible for ensuring that the ViaPath system it selected functioned and for providing a timely workaround when it did not. (*Id*., PageID #: 3487). He emphasizes that Defendants admitted the problem was not corrected promptly and argued that staff offered no explanation for failing to act before this litigation. (*Id*.). Plaintiff also maintains that the system lacked notice and an appeal process for rejected non-legal mail. (*Id*., PageID #: 3487-88). He argues that the phone, video, and chat systems were not adequate

alternatives because they shared restrictions that prevented contact with automated systems and organizations. (*Id*., PageID #: 3488-89).

Plaintiff rejects Knight's assertion that she lacked time to read inmate mail, arguing that reading selected items required little time and that his claim did not depend on her reading every inmate's mail. (*Id*., PageID #: 3490). He also argues that Knight's statement that she always followed HCDC procedure conflicted with the alleged failures to document senders and deliver certain logged mail. (*Id*., PageID #: 3490). Plaintiff concludes that the record contained sufficient evidence of interference, inconsistent explanations, and unreasonable communication practices to require denial of summary judgment. (*Id*., PageID #: 3490-91).

*D. Defendants' Reply and Supplemental Reply*

*(i) Reply to Plaintiff's Response to Motion for Summary Judgment*

Defendants use their reply to argue that the federal criminal record contradicted Plaintiff's claim that HCDC prevented effective communication with counsel or withdrawal of his plea. (DN 208, PageID #: 3384-85). They emphasize that Plaintiff's April 2023 letter to the criminal court described extensive preparation with his public defender and complained about the suppression ruling rather than HCDC. (*Id*., PageID #: 3385-86). Defendants also point to on Plaintiff's public defender's July and August 2023 visits and Plaintiff's plea-hearing statements that he had told his public defender everything, discussed possible defenses, obtained the requested investigation, and was satisfied with the representation. (DN 208, PageID #: 3386-87).

Defendants further argue that the events between the plea and sentencing showed continued access to counsel rather than interference. (*Id*., PageID #: 3387-89). They note that Plaintiff's public defender and the prosecutor jointly sought one continuance while awaiting the presentence report and that Plaintiff's public defender sought another after a recent meeting with Plaintiff raised

issues requiring resolution. (*Id.*). Defendants maintain that neither the sentencing filings nor Plaintiff's later *pro se* motions mentioned communication problems at HCDC. (*Id.*, PageID #: 3388-89).

Defendants reiterate that both the Sixth Amendment and First Amendment claims require proof that adequate alternative methods of communication were unavailable. (*Id.*, PageID #: 3389-90). Defendants maintain that Plaintiff could not make that showing because, during the nine months between his plea and sentencing, he received thirty-nine pieces of legal mail, received twenty-seven pieces of non-legal mail, participated in sixty-three video visits, and made well over one hundred telephone calls. (*Id.*, PageID #: 3391). They argue that Plaintiff's public defender's numerous filings and the undisputed volume of communication forecloses a reasonable finding that Plaintiff lacked access to counsel. (*Id.*, PageID #: 3391-92).

Regarding recorded telephone calls, Defendants asserts that HCDC's lines are recorded by default but that an attorney could complete a short process to disable recording. (*Id.*, PageID #: 3392). Hendricks avers that, during his twenty years at HCDC, he could not recall any attorney complaining that the process was difficult. (*Id.*). Defendants argue that HCDC did not intrude on the calls and that, even if it had, Plaintiff still had to show actual prejudice to the criminal defense. (*Id.*, PageID #: 3393).

Defendants likewise deny that Plaintiff's in-person meetings with counsel were recorded. (*Id.*). They state that the visitation room included a booth reserved for attorney visits with a telephone that did not record and that the security cameras captured video but not audio. (*Id.*). Defendants argue that, even if the meetings had been recorded, the claim still fails because Plaintiff presented no evidence of prejudice or the absence of other communication methods. (*Id.*).

Knight denies reading Plaintiff's legal mail or telling him that she had done so. (*Id*., PageID #: 3394). Defendants argue that HCDC policy prohibited reading inmate legal mail and that Knight had neither the time nor a reason to read mail for the hundreds of inmates she served. (*Id*.). They also contend that the supporting inmate statement filed by Plaintiff appeared to be in Plaintiff's handwriting and, in any event, could not establish a material dispute without proof of prejudice or lack of alternatives. (*Id*.).

Defendants explain the property dispute as the application of HCDC's excess-property policy. (*Id*., PageID #: 3394-95). They assert that Plaintiff accumulated enough property to break the hooks on two hanging storage bags and was then directed to sort his property into piles to keep, discard, or identify as discrepancies. (*Id*., PageID #: 3395). Defendants maintain that staff disposed only of the pile Plaintiff designated for disposal and did not remove anything from the discrepancy pile. (*Id*.). They argue that the dispute over stored materials was immaterial because Plaintiff had numerous other ways to communicate with counsel. (*Id*., PageID #: 3395-96).

Defendants also reject Plaintiff's claim that their summary-judgment motion had not been served. (*Id*., PageID #: 3396). They maintain that they mailed the motion to Plaintiff's current jail address as authorized by Rule 5 and that it was never returned as undeliverable. (*Id*.). Defendants conclude that the undisputed availability and use of multiple communication methods, together with the absence of criminal-case prejudice, entitled them to summary judgment on both claims. (*Id*., PageID #: 3396-97).

*(ii) Reply to Plaintiff's Supplemental Response to Motion for Summary Judgment*

Defendants argue that Plaintiff's supplemental response moved away from attempting to prove prejudice to the federal criminal case and instead challenged the adequacy of HCDC's available communication methods. (DN 215, PageID #: 3579). They maintain that their prior

reply had already shown that Plaintiff's frequent use of in-person visitation, video visitation, telephone calls, and mail defeated both constitutional claims. (Defendants' Supplemental Reply at 1). Defendants contend that the supplemental response created no genuine dispute concerning those methods. (*Id.*). Defendants maintain that Plaintiff still had not shown prejudice caused by HCDC and that his assertion that he could not transmit evidence and work product to support withdrawal of the plea was contradicted by the record. (*Id.*, PageID #: 3580).

Defendants emphasizes that Plaintiff's public defender filed numerous pleadings during the nine months between the guilty plea and sentencing without mentioning communication problems. (*Id.*, PageID #: 3580-81). They argue that an attorney facing the level of interference alleged by Plaintiff would have sought a continuance or otherwise raised the problem with the criminal court. (*Id.*, PageID #: 3581). Defendants again cite Plaintiff's receipt of thirty-nine pieces of legal mail and twenty-seven pieces of non-legal mail, his sixty-three video visits, and his more than one hundred telephone calls during that period. (*Id.*). Defendants conclude that Plaintiff's admitted ability to communicate with family and friends, the multiple channels available to him, and the absence of criminal-case prejudice require summary judgment on both claims. (*Id.*)

**IV.**

*A. Sixth Amendment Interference with Access to Counsel*

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. "This right includes the right to communicate with one's criminal-defense attorney while confined awaiting trial." *Thompson v. Causey*, No. 1:17-CV-P12-GNS, 2017 U.S. Dist. LEXIS 58656, at *3 (W.D. Ky. Apr. 18, 2017) (citing *Maine v. Moulton*, 474 U.S. 159, 170 (1985)).

Thus, the Sixth Amendment protects "the attorney-client relationship from intrusion in the criminal setting." *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974); *see also Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (holding that the Sixth Amendment right to the assistance of counsel applies only to criminal prosecutions and "extends to the first appeal of right, and no further"). "Access to courts and counsel, however, need not be more than 'reasonable.'" *Woods v. St. Louis Just. Ctr.*, No. 406-CV-233 CAS, 2007 U.S. Dist. LEXIS 60993, at *32 (E.D. Mo. Aug. 20, 2007) (citing *Lewis v. Casey*, 518 U.S. 343, 350-351 (1996) (holding that the Constitution does not mandate use of any particular method for providing access to courts or counsel)); *see also Weatherford v. Bursey*, 429 U.S. 545, 558 (1977). "For example, courts have rejected claims such as being denied telephone use for certain periods of time, so long as the detainee 'had other reasonable means to contact his or her attorney and where no prejudice resulted.'" *Mallory v. Miller*, No. 3:20-CV-P249-RGJ, 2021 U.S. Dist. LEXIS 47989, at *12-13 (W.D. Ky. Mar. 15, 2021) (quoting *Stamper v. Campbell Cnty.*, Ky., No. 2007-49 (WOB), 2009 U.S. Dist. LEXIS 63958, at *4 (E.D. Ky. July 24, 2009)); *see also Uraz v. Ingham Cnty. Jail*, No. 1:19-CV-550, 2019 U.S. Dist. LEXIS 155252, at *26 (W.D. Mich. Sept. 11, 2019) ("Plaintiff utterly fails to allege facts demonstrating that he had no other means of communicating with his attorney . . . .").

Defendants produced a letter mailed to the judge in Plaintiff's criminal case providing that "[Plaintiff's counsel] had prepared lots of arguments, technical documentation, practiced, and prepared [Plaintiff] to take the stand . . . worked with an expert, and prepared a subpoena list. (DN 180-4, PageID #: 1777). By Plaintiff's own admission, he spent extensive time working on his case with his public defender. Subsequently, Plaintiff was appointed a new public defender via the CJA Panel Attorney who visited Plaintiff multiple times at HCDC. (DN 180-13, PageID #: 1885-86). Further, on August 8, 2023, during a colloquy during Plaintiff's guilty plea hearing

the Court questioned Plaintiff whether his attorney knew everything that Plaintiff did, whether he understood what the government had to prove, whether he had discussed possible defenses with his attorney, whether Plaintiff's attorney had done all of the investigation that Plaintiff requested, and whether he was satisfied with is representation – all of which the Plaintiff answered affirmatively. (DN 208-1 PageID #: 3421-22).

In his response, Plaintiff contends that he "spent months" trying to contact his attorney to withdraw his guilty plea but was unable to due to issues with the mail; however, the record reflects that Plaintiff's attorney was actively pursuing his case during this time period. For instance, Plaintiff's attorney filed a Joint Motion to continue the sentencing hearing on January 29, 2024. (DN 208-1). Notably, the specified reason was waiting for a pre-sentencing report with no reports of Plaintiff's counsel having trouble speaking with Plaintiff. (*Id.*). On April 17, 2024, another motion to continue was filed because "issues have been presented to counsel in a recent meeting with Mr. Osbourne that need to be resolved." (*Id.*). By definition, Plaintiff's counsel would have to have spoken with Plaintiff in order to file the second motion to continue.

Accordingly, the record reflects that Plaintiff had access to his counsel throughout the time period. Further, Plaintiff has not alleged that he had no alternate means of communication with his attorney. Accordingly, Plaintiff has not carried his burden on his Sixth Amendment claim; thus, summary judgment is appropriate for Defendants.

*B. First Amendment Interference with Non-Legal Mail*

The First Amendment protects a prisoner's right to receive mail, but prison officials may impose restrictions on the receipt of mail that are reasonably related to security and other legitimate penological objectives. For instance, legal mail is afforded more protection than non-legal mail, which can be open, inspected, and read in furtherance of prison security. *See Sallier v. Brooks*,

343 F.3d 868, 874 (6th Cir. 2003). Importantly, Plaintiff's allegations are not necessarily that his mail was handled improperly by Defendants, but rather that there were significant delays in delivery of non-legal mail. (DN 16, PageID #: 149-50). Generally, "merely alleging an isolated delay or some other relatively short-term non content-based disruption in the delivery of prisoner mail will not support a First Amendment Claim." *Phillips v. Woods*, No. 23-5818, 2024 U.S. App. LEXIS 8229, at *3 (6th Cir. Apr. 4, 2024) (citing *Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987)). Further, it should be noted that this Court has repeatedly held that HCDC's mail policy to be constitutional.[2]

Here, the record reflects that non-legal mail addressed to an HCDC inmate is sent to a facility in Maryland. (DN 180-14, PageID #: 1891-92). This facility is unaffiliated with HCDC and processes the mail digitally, so that it can be accessed electronically via the ViaPath tablet system. (*Id.*). Defendants admit that during Plaintiff's incarceration at HCDC, there were technological issues related to the ViaPath tablet system which caused some inmates' personal mail to be sent to other inmates' accounts and that this happened to some of Plaintiff's mail. (*Id.*). However, when ViaPath did not resolve the issue, a HCDC employee was able to access the system and resolve the issues. (*Id.*). Further, despite a temporary delay in mailings, Plaintiff was able to regularly communicate with people outside of HCDC via mailings, telephone calls, video visits, and in-person visits from his attorneys. (DNs 180-9, 180-10, 180-11, 180-11, and 180-13). In total, Plaintiff sent out 70 pieces of non-legal mail, participated in 100 telephone calls, 144 video visits, and 4 in-person visits from his attorneys.

---

[2] *See Gilmore v. Brady*, No. 4:21-CV-00003-JHM, 2022 U.S. Dist. LEXIS 98555 (W.D. Ky. June 2, 2022) (does not violate First Amendment), *House v. Henderson Cnty. Det. Ctr.*, No. 4:21-CV-00038-JHM, 2022 U.S. Dist. LEXIS 166700 (W.D. Ky. Sep. 15, 2022) (does not violate First, Fourth, or Fourteenth Amendments), *Chapman v. Henderson Cnty. Det. Ctr.*, No. 4:21-CV-P2-JHM, 2021 U.S. Dist. LEXIS 93283 (W.D. Ky. May 14, 2021) (does not violate First or Sixth Amendments), *Mashburn v. Henderson Cnty.*, No. 4:22CV-00007-JHM, 2023 U.S. Dist. LEXIS 49393 (W.D. Ky. Mar. 23, 2023) (does not violate First or Sixth Amendments).

Plaintiff contends that he received delayed mail in two batches with letters ranging from April 10, 2023, through June 23, 2023, not arriving on his tablet until June 30, 2023; and letters from June 30, 2023, through February 23, 2024, not arriving until March 24, 2024. (DN 16-1, PageID #: 203-04). Plaintiff also submitted three grievances detailing the issues with receiving the mail via tablet on May 19, 2023, May 26, 2023, and July 22, 2023. (DN 203-18). However, despite these delays, the Sixth Circuit has held that "absent claims of intentional delay, mere delay in delivery of prisoner mail is not unreasonable and thus fails to rise to a constitutional question." *Yeoman v. Thompson*, No. 94-1392, 1994 U.S. App. LEXIS 34451, at *3 (6th Cir. Dec. 6, 1994). Plaintiff has not alleged that Defendants intentionally delayed his mail, in fact, Plaintiff's grievances regarding the issue speculate that the issue "[is] probably some technical configuration somewhere going wrong. Either the jail's equipment or [ViaPath's]." (DN 203-18, PageID #: 3191). Accordingly, Plaintiff has not met his burden on his First Amendment non-legal mail claim; accordingly, Defendants are entitled to summary judgment on this count.

**V.**

For the reasons stated above, **IT IS ORDERED** that the motion for summary judgment (DN 180) is **GRANTED**.

The Court will enter a separate Judgment dismissing this action for the reasons stated herein.

Date: September 10, 2026

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
Counsel of record
4414.016