**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

**MARK J. OSBORNE** **PLAINTIFF**

**v.** **CIVIL ACTION NO. 4:23-CV-00116-JHM**

**JAILER STEPHEN HARMON *et al.*** **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the motion for summary judgment filed by Defendants[1] Jailer Stephen Harmon and Deputy Jailer Melissa Wathen of the Warren County Regional Jail ("WCRJ").[2] (DN 181). Plaintiff Mark J. Osborne filed a response and supplemental response. (DNs 185, 197). Defendants filed a reply and supplemental reply. (DNs 186, 200). Accordingly, this matter is fully briefed and stands ripe for decision.

**I.**

At all times relevant to the events discussed in this Memorandum Opinion and Order Plaintiff was a pretrial detainee housed at the WCRJ. (DN 24, PageID #: 235). Plaintiff filed the instant *pro se* action under 42 U.S.C. § 1983 alleging violations of his constitutional rights during his incarceration at WCRJ. (DN 1). The Court conducted an initial review of Plaintiff's complaint and subsequent amended complaints pursuant to 28 U.S.C. § 1915A and allowed: (i) a retaliation claim against Defendant Harmon; (ii) a claim for interference with Plaintiff's right to counsel in violation of the Sixth Amendment against all Defendants; and (iii) a claim for interference with

---

[1] Plaintiff also brought claims against Henderson County, Kentucky, Jane Kight, Officer Toman, and Colonel Hendricks. Those Defendants have filed a separate motion for summary judgment (DN 180), which will be adjudicated via a separate memorandum opinion and order.
[2] Defendants make arguments referencing unidentified John and Jane Doe Officers, who were dismissed from this action subsequent to the filing of Defendants' motion for summary judgment; thus, the Court will not consider arguments relating to those parties unless they are applicable to the instant Defendants. (DN 189).

legal mail against all Defendants. (DNs 24, 57, and 154). The Defendants have denied all claims of liability against them. (DNs 29, 104, and 164).

**II.**

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-movant must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of *pro se* pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the

summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 U.S. App. LEXIS 27051, at *6-7 (6th Cir. May 5, 2010) (citations omitted). When opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and a party's "status as a *pro se* litigant does not alter" its burden of showing a genuine issue for trial. *Viergutz v. Lucent Techs., Inc.*, F. App'x 482, 485 (6th Cir. 2010) (citation omitted). Yet statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

**III.**

*A. Plaintiff's Allegations*

Plaintiff has filed a complaint and numerous amended complaints in this action. (DNs 1, 10, 12, 16, 93, and 190). Not every complaint is pertinent to the allegations against the Defendants herein; thus, the Court will condense the allegations related to the claims against Defendants as appropriate.

*(i) Retaliation Claim*

Plaintiff contends that Defendant Harmon "act[ed] in a retaliatory manner by having requested the Plaintiff . . . be moved to another facility and hinder[ed] Plaintiff's … legal defense, in response to his grievance[s]." (DN 1, PageID #: 13). Plaintiff argues that he was moved to the Henderson County Detention Center ("HCDC") six days after receiving a response regarding his grievances about legal mail being opened outside of his presence. (DN 16, PageID #: 146).

*(ii) First Amendment Legal-Mail Claim*

Plaintiff alleges that, during his time at WCRJ, Plaintiff's legal mail was opened outside of his presence multiple times. (DN 1, PageID #: 7). Plaintiff specifically points to an October 25,

2022, letter from the Community Legal Center, a November 13, 2022, letter from the National Lawyers Guild, a December 25, 2022, letter from the Butler County Court Clerk, and a September 19, 2022, letter and package from the Office of the Federal Public Defender as legal mail that was opened outside of his presence. (*Id.*). Plaintiff further contends that various mailings from the Department of Veterans Affairs were opened outside his presence. (DN 1-3, PageID #: 39). Plaintiff contends that Defendants Harmon and Wathen both personally opened his legal mail outside of his presence. (DN 16, PageID #: 155).

*(iii) Sixth Amendment Interference with Access to Counsel Claim*

Plaintiff contends that the alleged retaliatory transfer on by Defendant Harmon "complicat[ed] and restrict[ed] access between Plaintiff's attorney and himself during a narrow window where a brief was required to be filed." (DN 1, PageID #: 8-9). Plaintiff further alleges that Defendants "knowingly and maliciously violated Plaintiff's Sixth Amendment right to counsel by interfering with the attorney-client relationship, by providing privileged and private attorney-client strategic information . . . and or other avenues, having caused Plaintiff to suffer a less-than-favorable judgment." (DN 16, PageID #: 156).

*B. Defendants' Motion for Summary Judgment*

Defendants generally argue that Plaintiff fails on all claims asserted against Defendants. (DN 181).

*(i) Retaliation Claim*

Plaintiff alleges that he was transferred from the WCRJ to the HCDC in retaliation for grieving his legal mail issues to WCRJ staff. (DN 185, PageID #: 2632). Defendant Harmon contends that Plaintiff has not put forward evidence into the record to substantiate a claim for retaliation. (DN 181, PageID #: 1910). To that end, Defendant Harmon provides an affidavit in

which he avers that the decision to move Plaintiff was made by the United States Marshals Service. (DN 181-7, PageID #: 2606-07). Accordingly, Defendant Harmon argues that because he had no say in Plaintiff's transfer from WCJR to HCDC and Plaintiff has not provided evidence to the contrary, Plaintiff's retaliation claim must fail as a matter of law. (DN 181 PageID #: 1911). To support this argument, Plaintiff cites the following caselaw: *United States v. Espinoza-Arevalo*, No. 14-00332-02-CR-W-BP, 2015 U.S. Dist. LEXIS 174019, at *9 (W.D. Mo. Dec. 29, 2015) (holding that the Marshals Service has "broad authority to determine where to house its prisoners"); *Moyers v. Shudan*, No. 3:07-cv-393, 2009 U.S. Dist. LEXIS 53599, at *5 (E.D. Tenn. June 24, 2009) (denying plaintiff's motion to order the U.S. Marshals Service to house plaintiff in a detention center other than the Blount County Detention Center and noting that the "housing of federal prisoners pending court proceedings is within the discretion of the U.S. Marshals Service"); *Saunders v. United States*, 502 F. Supp. 2d 493, 496 (E.D. Va. 2007) (holding "[t]his open-ended authority recognizes the Marshals Service's need to 'weigh concerns of expense, administration, payment, access to the premises, and the veritable plethora of factors relative to placement'") (citation omitted).

*(ii) First Amendment Legal-Mail Claim*

With regard to Plaintiff's claim that Defendants opened his legal mail outside of his presence, Defendants acknowledge that inmates have a First Amendment right to receive mail and that there is a heightened protection afforded to legal mail with a requirement that legal mail be opened in the presence of a prisoner. (DN 181, PageID #: 1909). *See Sallier v. Brooks*, 343 F. 3d 868, 873 (6th Cir. 2003); *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996).

However, Defendants contend that isolated incidents of mail interference are insufficient to establish a constitutional violation and that Plaintiff must establish that Defendants "regularly

and unjustifiably interfered with the incoming legal mail." (DN 181, PageID 1909). *See Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003).

Defendants argue that the record reflects that Defendants "complied with [WCRJ's] mail handling policies in dealing with Plaintiff's mail" and that "[Defendants] responded to [Plaintiff's] many grievances and requests for information and explained what was and was not legal mail and how the policies were applied." (DN 181, PageID #: 1910). Implicit in this argument is that Plaintiff's mail that was opened outside of his presence was not actually legal mail pursuant to controlling precedent. (*Id.*). *See Lavado v. Keohane*, 992 F.2d 601, 608 (6th Cir. 1993) (holding that "[t]he [Supreme] Court also found it to be 'entirely appropriate that the state may require any [communications from an attorney] to be specially marked as originating from an attorney, with his name and address being given, if they are to receive special treatment") (citing *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974)). Lastly, Defendants contend that any mailing from a county clerk is not protected legal mail under Sixth Circuit precedent. (*Id.*). *See American Civil Liberties Union Fund of Michigan v. Livingston Cnty.*, 796 F. 3d 636, 643 (6th Cir. 2015) (holding that mail from a county clerk did not constitute legal mail).

*(iii) Sixth Amendment Interference With Access to Counsel Claim*

Defendants acknowledge that the Sixth Amendment affords a person accused of committing a crime with the right to have assistance of counsel for their defense. (DN 181, PageID #: 1907). However, Defendants argue that Plaintiff's Sixth Amendment rights are not universal and that access to counsel "need not be more than reasonable." (*Id.*) (citing *Mashburn v. Henderson Cnty.*, No. 4:22-Cv-0007-JHM, 2023 LEXIS 49393, *4 (W.D. Ky. Mar. 23, 2023). Accordingly, Plaintiff must establish that he was unreasonably denied access to his criminal defense attorney and he had no alternative means to communicate with his defense attorney.

Defendants contend that Plaintiff cannot establish that he did not have access to his attorney or that he had no alternate access to counsel. (DN 181, PageID #: 1908-09). As evidence to support the assertion that Plaintiff had access to his defense counsel, Defendants point to a letter sent to the trial court handling Plaintiff's criminal matters in which Plaintiff provided: "[Plaintiff's Counsel] and I prepared lots of arguments, technical documentation, practiced, and prepared me to take the stand to speak on many of the issues[.]" (DN 181-8, PageID #: 2707). Lastly, Defendants contend that Plaintiff has not asserted or proven that he had no alternate access to counsel. (DN 181, PageID #: 1909).

*C. Plaintiff's Response and Supplemental Response*

*(i) Retaliation Claim*

With regard to his retaliation claim, Plaintiff points to a January 31, 2023, email thread between Defendant Harmon and Katrina Burch of the United States Marshals Service, in which Burch asked: "Harmon – Can you give me a list of some males or females who may be giving you issues or are a sex offender that I can look at rehoming somewhere else if I can?" (DN 185-7). Plaintiff argues that this email was made on the same day as he received a grievance response from Defendants explaining that his grievances regarding legal mail were unfounded. (DNs 185, PageID #: 2632, 185-1, PageID #: 2649-50). Plaintiff contends that the "issues" referenced in the Harmon-Burch email thread are his grievances and he was retaliated against for filing them. (*Id.*).

*(ii) First Amendment Legal-Mail Claim*

Plaintiff cites the following instances of alleged tampering with his legal mail:

1) June 7, 2022, Plaintiff avers that he received three items from the Public Defender pertaining to discovery in Plaintiff's criminal case, two of which were processed correctly, but a letter and print-out describing the discovery materials had been opened. (DN 185-3, PageID: 2658-59);

2) June 17, 2022, mail from George Washington University, opened outside of Plaintiff's presence. (*Id.*, PageID #: 2660);

3) August 22, 2022, a response letter from AppalReD, a community legal firm in Kentucky was opened outside of Plaintiff's presence. (*Id.*);

4) September 19, 2022, package from Plaintiff's public defender opened outside of Plaintiff's presence. (*Id.*);

5) October 31, 2022, letter from the Community Legal Center opened outside of Plaintiff's presence. (*Id.*, PageID #: 2661);

6) A November 13, 2022, letter from the National Lawyers Guild. (DN 1, PageID #: 7);

7) A November 15, 2022, letter from the Department of Veterans affairs. (DN 185-4, PageID #: 2674);

8) A December 25, 2022, letter from the Butler County Court Clerk regarding a civil matter Plaintiff was part of. (DN 1, PageID #: 7).

Further, in Plaintiff's supplemental response, he provides that another inmate had similar issues by virtue of citing that inmate's grievances. (DN 197-1).

*(iii) Sixth Amendment Interference with Access to Counsel Claim*

Plaintiff contends that by virtue of opening his legal mail outside of his presence, Defendants have interfered with his access to counsel. (DN 185, PageID #: 2635). Plaintiff also contends that the alleged retaliation by transferring him to the HCDC "demonstrated that all forms of communication were cut off during a critical window, as a result of [the] transfer and [Plaintiff] suffered a less-than-favorable judgment because of it." (*Id.*, PageID #: 2626).

*D. Defendants' Reply and Supplemental Reply*

The Defendants generally restate the arguments made in their motion for summary judgment in their reply/supplemental reply to Plaintiff's response/supplemental response. (DNs 186, 200).

## IV.

### *A. Retaliation Claim*

To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

In this circumstance, Plaintiff has sufficiently demonstrated that he was engaged in protected conduct (sending and receiving legal mail and/or filing grievances). However, Plaintiff has failed to demonstrate the second prong of the test set forth in *Thaddeus-X*.

The Sixth Circuit has held that typically "transfer from one prison to another cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment Rights." *Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases). However, the Sixth Circuit has noted that "in other cases . . . a prison transfer or the threat of a transfer can be an adverse action if that transfer would result in foreseeable, negative consequences to the particular prisoner." *Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010) (citing *Siggers-El v. Barlow*, 412 F.3d 693, 701-02 (6th Cir. 2005) (holding that a transfer was an adverse action because it resulted in the foreseeable consequence that the prisoner would have a harder time meeting with and paying for his lawyer, thereby inhibiting the prisoner's ability to access the courts)).

The *Hill* Court acknowledged that the plaintiff's transfer was an adverse action because he was sent from general population to a "lockdown unit" at a new facility, holding that "being threatened with a transfer to a more restrictive living environment with fewer privileges would

deter a person of ordinary firmness from exercising the constitutional right to file grievances." *Hill,* 630 F.3d at 475. Importantly, Plaintiff avers that when he arrived at HCDC he "was placed in isolation for quarantine, unable to call anyone, except on Sunday, per HCDC policy" which impacted his legal defense. (DN 185-3, PageID #: 2666).

However, the record shows that Plaintiff continued to have unfettered access to the courts and his attorney once he was transferred to HCDC. While at HCDC, Plaintiff sent out 70 pieces of mail, received 61 pieces of legal mail, participated in 100 telephone calls and 144 video calls, and received four in-person visits from his attorneys. (DNs 180-9, 180-10, 180-11, 180-11, and 180-13). Further, in a letter to the judge presiding over his criminal trial, Plaintiff provided: "[My Public Defender] and I had prepared lots of arguments, technical documentation, practiced and prepared me to take the stand to speak on many of the issues[.]" (DN 180-4, #: PageID 1777). Plainly, Plaintiff had access to his attorney subsequent to the transfer from WCRJ to HCDC; accordingly, it does not follow that Plaintiff can sustain a retaliation claim based on denial of access to his attorney.

Lastly, while Plaintiff contends that he was placed in quarantine when he first arrived at HCDC, there is no argument that he was placed in a more restrictive environment beyond the initial quarantine period. To the extent that Plaintiff contends that his quarantine period impeded his access to his attorney, this Court has previously held that: "[Prisons have a] countervailing state interest in preventing . . . the spread of Covid in prisons. Administrators have both the authority and responsibility to place some restrictions on the access to the law library and affiliated legal materials to implement COVID-19 safety precautions . . . even if it somewhat hampers prisoners' ability to pursue their legal claims. *Carpenter v. Strough*, No. 3:20-CV-179-BJB, 2021 U.S. Dist. LEXIS 228167, at *19 (W.D. Ky. Nov. 30, 2021). The Court finds that Plaintiff's temporary

placement in quarantine due to COVID-19 does not amount to an adverse action to support a retaliation claim. Accordingly, summary judgment is appropriate for Defendant Harmon on Plaintiff's retaliation claim.

*B. First Amendment Legal-Mail Claim*

The First Amendment protects a prisoner's right to receive mail, but prison officials may impose restrictions on the receipt of mail that are reasonably related to security and other legitimate penological objectives. *See Sallier* 343 F.3d at 873. Courts ascribe particular significance to this right when "legal mail" is involved, granting special protection to "correspondence that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts." *Id.* at 874 (citing *Kensu*, 87 F.3d at 174; *Davis,* 320 F.3d at 351).

"[P]rison officials who open and read incoming mail in an arbitrary and capricious fashion violate a prisoner's First Amendment rights." *Id.*, at 873-74 (citing *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986)). With that being said, legitimate security or penological objectives may include opening a prisoner's mail "pursuant to a uniform and evenly applied policy with an eye to maintaining prison security." *Id.* (quoting *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir. 1993)). But when the mail is legal mail, the Court has a heightened concern with allowing prison officials uninhibited access, because a prison's security interests do not automatically supersede a prisoner's First Amendment right to receive correspondence that relates to the prisoner's legal rights, attorney-client privilege, or access to the courts. *Id*. at 874. In an effort to balance both the security interests of the prison and the First Amendment rights of the inmate, courts have approved prison policies that permit prison officials to open legal mail and inspect it for contraband in the presence of the prisoner. *Id.*; *see also Wolff v. McDonnell*, 418 U.S. 539, 575 (1974); *Knop v.*

*Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992). Accordingly, even constitutionally protected mail can be opened—but not read—by prison officials for the purpose of inspecting it for contraband.

Plaintiff has alleged the following pieces of mail were tampered with:

1) June 7, 2022, Plaintiff avers that he received three items from the Public Defender pertaining to discovery in Plaintiff's criminal case, two of which were processed correctly, but a letter and print-out describing the discovery materials had been opened. (DN 185-3, PageID: 2658-59);

2) June 17, 2022, mail from George Washington University, opened outside of Plaintiff's presence. (*Id.*, PageID #: 2660);

3) August 22, 2022, response letter from AppalReD, a community legal firm in Kentucky opened outside of Plaintiff's presence. (*Id.*);

4) September 19, 2022, package from Plaintiff's public defender opened outside of Plaintiff's presence. (*Id.*);

5) October 31, 2022, letter from the Community Legal Center opened outside of Plaintiff's presence. (*Id.*, PageID #: 2661);

6) A November 13, 2022, letter from the National Lawyers Guild. (DN 1, PageID #: 7);

7) A November 15, 2022, letter from the Department of Veterans Affairs. (DN 185-4, PageID #: 2674);

8) A December 25, 2022, letter from the Butler County Court Clerk regarding a civil matter Plaintiff was part of. (DN 1, PageID #: 7).

With regard to the June 17, letter from George Washington University, the August 22 letter from AppalReD, the October 31 letter from Community Legal Center, the November 13, 2022, letter from the National Lawyers Guild, and the November 15, 2022 letter from the Department of Veterans Affairs, all physical letters are present in the record and are not marked as "legal" in nature. The Sixth Circuit has defined legal mail as the "delivery of legal materials to a prisoner, properly and **clearly marked as legal materials**[.]" *Kensu v. Haigh*, 87 F.3d at 174 (emphasis

added). Accordingly, none of the above constitute legal mail and therefore do not receive the protections afforded to legal mail.

With regard to the June 7 letter from Plaintiff's public defender, September 19 package from Plaintiff's public defender, and a December 25 letter from the Butler County Clerk, the physical envelopes are not in the record, so it is impossible to determine whether or not they were properly marked as legal materials. However, to "state a claim of constitutional proportions," the Plaintiff must "allege routine opening or interference with his mail." *Barnes v. Daviess Cnty. Gov't*, No. 4:22-CV-P107-JHM, 2022 U.S. Dist. LEXIS 219485, at *8 (W.D. Ky. Dec. 6, 2022) (citing *Davis*, 320 F.3d at 351); see also *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) ("Such a random and isolated incident [of mail interference] is insufficient to establish a constitutional violation."). Here, three alleged incidents of mail interference all taking place approximately three months apart from each other do not suggest a "routine opening or interference with [Plaintiff's] mail." Accordingly, summary judgment is appropriate for Defendants on this claim.

*C. Sixth Amendment Interference With Access to Counsel Claim*

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. "This right includes the right to communicate with one's criminal-defense attorney while confined awaiting trial." *Thompson v. Causey*, No. 1:17-CV-P12-GNS, 2017 U.S. Dist. LEXIS 58656, at *3 (W.D. Ky. Apr. 17, 2017) (citing *Maine v. Moulton*, 474 U.S. 159, 170 (1985)). Thus, the Sixth Amendment protects "the attorney-client relationship from intrusion in the criminal setting." *Wolff v. McDonnell*, 418 U.S. 539, 577 (1974); *see also Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (holding that the Sixth Amendment right to the assistance of counsel applies only to criminal

prosecutions and "extends to the first appeal of right, and no further"). "Access to courts and counsel, however, need not be more than 'reasonable.'" *Woods v. St. Louis Just. Ctr.*, No. 406-CV-233 CAS, 2007 U.S. Dist. LEXIS 60993 at *32 (E.D. Mo. Aug. 20, 2007) (citing *Lewis v. Casey*, 518 U.S. 343, 350-351 (1996) (holding that the Constitution does not mandate use of any particular method for providing access to courts or counsel)); *see also Weatherford v. Bursey*, 429 U.S. 545, 558 (1977). "For example, courts have rejected claims such as being denied telephone use for certain periods of time, so long as the detainee 'had other reasonable means to contact his or her attorney and where no prejudice resulted.'" *Mallory v. Miller*, No. 3:20-CV-P249-RGJ, 2021 U.S. Dist. LEXIS 47989, at *12-13 (W.D. Ky. Mar. 15, 2021) (quoting *Stamper v. Campbell Cnty.*, Ky., No. 2007-49 (WOB), 2009 U.S. Dist. LEXIS 63958, at *4 (E.D. Ky. July 24, 2009)); *see also Uraz v. Ingham Cty. Jail*, No. 1:19-CV-550, 2019 U.S. Dist. LEXIS 155252, at *26 (W.D. Mich. Sept. 11, 2019) ("Plaintiff utterly fails to allege facts demonstrating that he had no other means of communicating with his attorney . . . .").

In this instance Plaintiff has failed to demonstrate that he was denied access to counsel. Plaintiff wrote a letter to the judge in his criminal case detailing the time spent between Plaintiff and his attorney in preparation for the case. (DN 180-4, #: PageID 1777). The Plaintiff has failed to assert facts to demonstrate that he was denied access to counsel while at WCRJ. Accordingly, Defendants are entitled to summary judgment on this count.

**V.**

For the reasons stated above, **IT IS ORDERED** that the motion for summary judgment (DN 181) is **GRANTED**.

The Court will enter a separate Judgment dismissing this action for the reasons stated herein.

Date: September 10, 2026

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
Counsel of record

4414.016